UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  vs.<br><br>JOSHUA DAVID WOLFE,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 4:06-cr-0017-RRB-TWH<br>) |

TRANSCRIPT OF SENTENCING

BEFORE THE HONORABLE RALPH R. BEISTLINE
District Court Judge

Fairbanks, Alaska
July 27, 2007

APPEARANCES:

    FOR THE PLAINTIFF:        OFFICE OF THE U.S. ATTORNEY
                                       BY:  BRYAN SCHRODER, ESQ.
                                           ASSISTANT U.S. ATTORNEY
                                    222 W. Seventh Ave. #9, Room 253
                                    Anchorage, Alaska 99513

    FOR THE DEFENDANT:        FEDERAL PUBLIC DEFENDER
                                       FOR THE DISTRICT OF ALASKA
                                       BY:  M. J. HADEN, ESQ.
                                         ASSISTANT FEDERAL DEFENDER
                                    601 West Fifth Avenue, Suite 800
                                    Anchorage, Alaska 99501

TRANSCRIPTS ONLY
1943 Hillcrest Drive
Anchorage, Alaska 99517
(907) 276-0306

Page 2

1          PROCEEDINGS
2    9:07:37
3         THE CLERK: All rise. His Honor the Court, the United
4    States District Court for the District of Alaska, is now in
5    session, Honorable Ralph R. Beistline presiding. Please be
6    seated.
7         THE COURT: Good morning.
8         MS. HADEN: Good morning, Your Honor.
9         THE COURT: We're on record, United States of America v.
10   Wolfe. It's case 4 dash 6 dash -- looks like a 1 -- or 17, and
11   this -- it was May 16th of '07 that Mr. Wolfe was here and pled
12   guilty to both of the counts charged in the indictment,
13   distribution of cocaine base. A presentence report was ordered.
14   That's been prepared. Any changes or additions from the
15   defendant's perspective?
16        MS. HADEN: Only the ones that were set out in my
17   objections.
18        THE COURT: Other than what's previously been addressed?
19        MS. HADEN: No, sir.
20        THE COURT: Okay, does the Government have any?
21        MR. SCHRODER: None with the Government, Your Honor.
22        THE COURT: Where's the probation -- oh, there. Okay.
23   See, in Anchorage they sit on this side, so I thought -- any
24   changes or additions from your perspective?
25        UNIDENTIFIED SPEAKER: No, Your Honor.

Page 3

1         THE COURT: Okay, very well, so did you get a chance to
2    look at it, Mr. Wolfe?
3         MR. WOLFE: Yes, Your Honor, I did.
4         THE COURT: Any changes or additions from your
5    perspective?
6         MR. WOLFE: No, sir.
7         THE COURT: Okay. So the Court will accept the
8    presentence report and the factual statements contained therein
9    as having been established by a preponderance of the reasonably
10   reliable information. We'll proceed to sentencing based on
11   that. I -- I've read all the pleadings, I've read all the
12   letters submitted. I'm quite familiar with the issues in
13   dispute and where the parties lie. There's not a great
14   disparity. I'll hear -- any sentencing witnesses today
15   from.....
16        MR. SCHRODER: None from the Government, Your Honor.
17        THE COURT: .....the Government? What about the
18   defendant?
19        MS. HADEN: No, Your Honor.
20        THE COURT: Okay. Very well. So we'll hear from
21   Mr. Schroder.
22        MR. SCHRODER: Your Honor, as the Government said in our
23   sentencing memorandum, as you just mentioned, we recommend a
24   sentence of 112 months imprisonment, along with five years
25   supervised release, which is within the calculated guideline

Page 4

1    range, and we concur with the guidelines calculation. Examining
2    the sentencing factors in 18 U.S.C. 3553 we believe looking at
3    history and characteristics of the defendant the need to provide
4    deterrence and protection for the public call for a sentence
5    that is within the guideline range. A significant sentence will
6    send a message to the community, as well as to other drug
7    dealers in Fairbanks, that the criminal justice system is taking
8    serious action to address the threat of crack cocaine in this
9    community.
10        This sentence addresses the extensive criminal history of
11   the defendant, which the Court's seen in the PSR started as a
12   juvenile and just continued directly into adulthood. It
13   involves serious crimes like burglary, including a theft of
14   firearms, and as the PSR noted, Your Honor, it includes quite a
15   bit of drug dealing that ended with the arrest and the
16   prosecution in this case. The defendant's had the opportunity
17   to set his life straight.
18        He claims he wants to do that and the Government hopes
19   that's true, but he's had a lot of opportunities to do that,
20   including -- but ended up with, as noted in the PSR, five
21   petitions to revoke off of the probation in the last burglary
22   conviction, and crack cocaine does substantial damage to a
23   society, and especially in a small town. It can harm children,
24   it can harm -- we all heard the indication and stories of crack
25   babies. All of that kind of thing is magnified in a smaller

Page 5

1    town like Fairbanks. The damage is certainly more substantial.
2         The Government opposes the defendant's request to apply
3    the proposed sentencing guideline changes. Those changes
4    have -- as we noted, have not taken effect. Congress has had
5    the opportunity in the past to make those changes. They have
6    declined to do so. They may do so this time, but that's going
7    to be up to Congress, and Congress is the elected body, not the
8    sentencing commission. We think it's appropriate for the Court
9    to wait and act on the decision of Congress, not on the
10   sentencing commission. If Congress decides to make the
11   guidelines retroactive, the defendant will get the benefit of
12   that at that time, but it's not appropriate to do it now, and we
13   think that's especially true because on the timing of this he's
14   only in a position to make this argument because he was a
15   fugitive for a year, and we think he should not get the benefit
16   of being a fugitive for a year.
17        Government notes that the defendant's obviously had a
18   difficult life and he claims to be back on -- trying to get on a
19   proper path, triggered by the birth of his child, and, again, we
20   hope that's true. For that purpose we're not arguing for
21   anything above the middle of the guideline range, and we think
22   that the Bureau of Prisons 500-hour program as requested by the
23   defendant is probably appropriate in this case. However,
24   finally, we believe these are serious, very serious matters in
25   this community and the defendant must be held accountable for

Page 6

1  his actions, and we believe a sentence within the guideline
2  range does that. Thus, we're requesting 112 months imprisonment
3  and five years supervised release.
4       THE COURT: All right, thank you very much. All right,
5  counsel, Ms. Haden.
6       MS. HADEN: Your Honor, change begins with a first step,
7  and Mr. Wolfe has taken a very substantial first step in making
8  a positive change in his life. One can only imagine what was
9  going through his head when he made the decision to come back to
10 Fairbanks, turn himself in, knowing that he faced a substantial
11 jail sentence, and he took that step so that he could change his
12 life and make a better life for his son.
13      Your Honor, sometimes it takes a dramatic change in
14 someone's life before they can look at what they're doing and
15 realize the effect that it has not only on themselves, but on
16 others of the community, and when Mr. Wolfe's son was born he
17 was given that opportunity to look at his life, to look at his
18 family, and to look at his son, and know that he didn't want his
19 son to grow up the way that he had grown up.
20      When you review the PSR you can tell that Mr. Wolfe had a
21 very traumatic childhood, 31 incidents from the time that he
22 started to reside in Fairbanks when he was around six or seven
23 years old, 31 times reports were made to the Department of
24 Children and Family Services of neglect. He was bounced from
25 foster home to foster home, and while, yes, he was given some

Page 7

1  opportunities, at that time in his life he didn't take advantage
2  of them, but he's here today and he's here because he turned
3  himself in and he wants to get through this and over this and he
4  wants to break the cycle. He doesn't want his son to grow up
5  the way that he did, and he wants to give back to the community
6  and have his son grow up to be a respected member of the
7  community and his son to grow up drug free, and, Your Honor,
8  that's why we think that a sentence of 84 months is appropriate.
9       When you look at his history and characteristics and
10 everything that he's gone through in his life -- and I know I've
11 heard this Court say many, many times it's not what you say,
12 it's what you do, and he's taken that first step in turning his
13 life around. He's taken a positive step by facing these charges
14 and coming back to Fairbanks on his own and turning himself in.
15      So that and combined with his young age, he has marketable
16 skills, he can be employable, he's worked as -- construction
17 work, he's done some work in the food and restaurant industry,
18 so he has marketable skills. I think you can tell from the
19 letter that he wrote to the Court that he's an intelligent man.
20 Given the opportunity, given the chance, I think that he can
21 remain drug free and crime free.
22      Given those factors, along with the proposed new
23 amendments to the crack cocaine guideline ranges, I know that I
24 outlined that to some great detail in my sentencing memo, and
25 there's been a long history of conflict between Congress and the

Page 8

1  sentencing commission, but I think that this last report that
2  the sentencing commission has put out -- and I hope the Court
3  had an opportunity to check out the website. It's quite a
4  lengthy study that says why the guidelines should be changed and
5  why Congress should get rid of the 100-to-1 ratio between powder
6  cocaine and crack cocaine. I think that this is the first time
7  that it's been before Congress since 2002, I believe, and I
8  think there's a lot of push behind it this time and that it will
9  probably go through, and I think the Court should give that
10 consideration. Certainly, other courts throughout the nation
11 are doing that, and I think it would be appropriate in this
12 case. These were street-level hand-to-hand sales, and if this
13 were powder cocaine we wouldn't be in federal court. It'd be
14 over in state court and the penalties would be much, much less.
15      So taken all of those factors into consideration I think
16 that a sentence of 84 months would be appropriate, five years of
17 supervised release, and I do think that the 500-hour drug and
18 alcohol program is much needed in this case, and we would ask
19 for a recommendation of Sheridan because that's where
20 Mr. Wolfe's son is residing down in Oregon. Thank you.
21      THE COURT: Thank you. Was there -- there was no plea
22 agreement, right?
23      MS. HADEN: No, sir.
24      THE COURT: Okay. And if I were to accept all of your
25 arguments you would -- you -- the difference between crack and

Page 9

1  powder is two levels in this particular case; is that what
2  you're telling me?
3       MS. HADEN: Yes, sir. The proposed amendments would be a
4  two-level decrease, so.....
5       THE COURT: okay.
6       MS. HADEN: .....instead of being a level 25 it would be a
7  level 23.
8       THE COURT: Okay. So, Ms. Haden, what is the status of
9  the State's charges? Does he have anything pending in state
10 court?
11      MS. HADEN: Yes, Your Honor, he does have a PTR pending.
12      THE COURT: What.....
13      MS. HADEN: There.....
14      THE COURT: .....is the -- is there any connection between
15 that and this or.....
16      MS. HADEN: Yes, Your Honor. It's based on this new
17 criminal.....
18      THE COURT: No, I.....
19      MS. HADEN: .....conduct.
20      THE COURT: .....understand, but is -- are there any
21 agreements that -- is that separate in the state from this?
22      MS. HADEN: Totally separate, Your Honor. There are no
23 agreements. I believe he's looking at about a 21-month-sentence
24 over in the state.
25      THE COURT: Okay. Let's see what other questions I had.

Page 10

1  When did he turn himself in? He knows that.
2      MS. HADEN: I'd have to look in my file, Your Honor,
3  but.....
4      THE COURT: Okay, I'm just testing it.
5      MS. HADEN: .....he probably knows.
6      THE COURT: All right, that stuff doesn't matter. Okay.
7  All right, Mr. Wolfe.
8      MR. WOLFE: Do I.....
9      THE COURT: You just sit.....
10     MS. HADEN: You can just sit right here.
11     THE COURT: .....right there and pull the microphone up
12 and it's your.....
13     MR. SCHRODER: Your Honor, it was March of this year.
14     THE COURT: March.
15     MR. WOLFE: First, I'd like to -- to apologize to
16 everybody that's here today. I never realized how my -- my
17 actions affected other people.
18     THE COURT: Can -- have I sentenced you before? Just out
19 of curiosity.
20     MR. WOLFE: I believe so.
21     THE COURT: Okay.
22     MR. WOLFE: I don't know if you've sentenced me, but I've
23 been in -- in your courtroom before.
24     THE COURT: I thought so. Okay. Must have been as a
25 juvenile, though, right?

Page 11

1      MR. WOLFE: Yes, sir.
2      THE COURT: Okay. All right. Vague recollection. Okay,
3  go ahead, because I -- we've star-- we've gone through a little
4  bit of this. Go ahead.
5      MR. WOLFE: Yeah. I never realized how my -- my actions
6  have really affected the people around me, what.....
7      THE COURT: How can you.....
8      MR. WOLFE: .....the community.....
9      THE COURT: .....you know, when you kick someone's door in
10 and steal -- go into your house you know that's going to have to
11 affect somebody.
12     MR. WOLFE: Yes, sir.
13     THE COURT: And you did those kind of things, right?
14     MR. WOLFE: Yes, I did.
15     THE COURT: Okay, that -- I don't like burglars, because
16 you break into homes, people could be there. No one likes
17 burglars. You understand that?
18     MR. WOLFE: Yes, I do.
19     THE COURT: And just think now that you're a family man,
20 you got -- you know, you'll be in jail. What if someone decides
21 to kick in the -- your family's door and steal and you got your
22 little baby sitting there? You know, it's going to make you
23 mad, isn't it?
24     MR. WOLFE: Yes, it will.
25     THE COURT: Go through your drawer, go through your

Page 12

1  belongings and you're not there? You -- no human being has a
2  right to do that to another human being. Do you understand
3  that?
4      MR. WOLFE: Yes, I do.
5      THE COURT: Okay. I don't want to interrupt you, but we
6  got plenty of time, so go ahead.
7      MR. WOLFE: I know there's nothing that I can say or do to
8  change what I've done. All I can do is look at the -- the --
9  the future and what -- what I want out of life now. You know, I
10 don't want my son to grow up the same lifestyle that I've had.
11     THE COURT: Okay, well, you know, you probably said this
12 to other judges. You know, you've been sentenced before.
13 Did -- were you just fooling when you told the other judges that
14 or is -- what's the difference?
15     MR. WOLFE: The difference is that I -- I have -- I have a
16 son that changed me, Your Honor. I can't really explain in
17 detail how it did change me except for the fact that I know the
18 life that I've been living is wrong.
19     THE COURT: Well, you're starting out to do to your son
20 what your dad did to you.
21     MR. WOLFE: Yes, sir, I am.
22     THE COURT: That's all -- I mean, my goodness, that
23 doesn't -- you of all people should know the damage you could be
24 doing, because you've lived it.
25     MR. WOLFE: Yes, sir.

Page 13

1      THE COURT: Okay, go ahead.
2      MR. WOLFE: I just don't want him to follow my footsteps,
3  and I know if I keep living the life that I -- I'm living I
4  can't show him the right way.
5      THE COURT: So what are going to do? What are you going
6  to do to show him that he shouldn't grow up and be a drug dealer
7  like his dad?
8      MR. WOLFE: Well, the first step was to actually turn
9  myself in and.....
10     THE COURT: That was impressive. Why did you do that?
11     MR. WOLFE: Because I know what I did was wrong and I want
12 to move on with my life. I want to become a positive role model
13 to him.
14     THE COURT: Okay, so you were in Oregon at the time?
15     MR. WOLFE: Yes, sir.
16     THE COURT: And you said -- I'm -- you knew you had these
17 charges against you.
18     MR. WOLFE: I've never ran from anything in my life.
19     THE COURT: You ran from this.
20     MR. WOLFE: I ran because I -- I had a son, and when he
21 was born I wanted to see him take his first steps and hear his
22 first words. I knew that I had to pay for what I've done.
23     THE COURT: So -- and you flew back on your own or
24 why.....
25     MR. WOLFE: Yes, sir, I did.

Page 14

1  THE COURT: .....didn't you turn yourself in back there?
2  MR. WOLFE: Because I wanted to come here and turn myself
3  in here.
4  THE COURT: Okay. So what did you do? How did you do?
5  You flew back here. What did you do, go knock at the marshal's
6  door?
7  MR. WOLFE: No, Your Honor. I -- I flew back here and
8  I -- I called a lawyer.....
9  THE COURT: Okay.
10  MR. WOLFE: .....and asked what procedures I needed to do
11  in order to turn myself in.
12  THE COURT: Okay.
13  MR. WOLFE: He told me to come to his office and I did.
14  We called -- the first thing I did was I called my P.O......
15  THE COURT: Okay.
16  MR. WOLFE: .....the P.O.'s office, the adult probations
17  office, and notified them that I was back and that I had
18  something that I needed to take care of, and second thing I did
19  was had the lawyer call the federal agents that were looking for
20  me and notify them that I was willing to turn myself in and that
21  I was here to surrender myself.
22  THE COURT: So then what happened?
23  MR. WOLFE: I drove down to the federal building here and
24  turned myself in.
25  THE COURT: Okay. All right. You've been in ever since.

Page 15

1  MR. WOLFE: Yes, sir.
2  THE COURT: Okay. Go ahead.
3  MR. WOLFE: I just -- I hope that you do considerate -- or
4  consider treatment in my sentence, because I do need help.
5  I -- I don't want to live my life like this anymore.
6  THE COURT: Well, what -- you've been a druggie and a drug
7  dealer all your adult life, right?
8  MR. WOLFE: Yes, Your Honor.
9  THE COURT: Why do you think you can go be clean and sober
10  when you walk the street alone again?
11  MR. WOLFE: Because I don't want to live this life no
12  more. I don't want.....
13  THE COURT: Well, most druggies don't want to live the
14  life, but they do. Why are you different? What are you going
15  to do different?
16  MR. WOLFE: The thing I'm going to do different is I'm not
17  going to -- I'm not going to break the law anymore and I'm not
18  going to use drugs anymore.
19  THE COURT: You think you have the personal power to
20  resist that temptation?
21  MR. WOLFE: Yes, I do.
22  THE COURT: I mean, this is probably the longest period of
23  sobriety in your life since you've been in jail, right?
24  MR. WOLFE: Yes, sir.
25  THE COURT: Okay. Go ahead.

Page 16

1  MR. WOLFE: I don't -- I don't -- like I said, I don't
2  want my son to grow up thinking that it's okay to -- to break
3  the law or to use drugs, because it's not right. I don't want
4  him grow up and see things and -- and do the things that I've
5  done.
6  THE COURT: Well, you're -- you know, you're basically a
7  kid yourself.
8  MR. WOLFE: Yeah.
9  THE COURT: Do you understand that? You're.....
10  MR. WOLFE: Yes, sir.
11  THE COURT: .....just basically a kid. I mean, now you've
12  got a son.....
13  MR. WOLFE: Yeah.
14  THE COURT: .....and so you've got to worry about your
15  son. You got to worry about yourself, too, because you're not
16  going to be any good to anybody if you're on drugs.
17  MR. WOLFE: Correct.
18  THE COURT: And so you've got two people to worry about.
19  Not.....
20  MR. WOLFE: Yes.
21  THE COURT: .....only your son, it's about you, too.....
22  MR. WOLFE: Yes, sir.
23  THE COURT: .....do you understand that?
24  MR. WOLFE: Yes. That's why I'm.....
25  THE COURT: Okay.

Page 17

1  MR. WOLFE: .....asking for -- for treatment during.....
2  THE COURT: Okay.
3  MR. WOLFE: .....my sentence or -- or.....
4  THE COURT: So are you going to take it seriously,
5  this.....
6  MR. WOLFE: Yes, Your.....
7  THE COURT: .....treatment?
8  MR. WOLFE: .....Honor, I am.
9  THE COURT: Okay.
10  MR. WOLFE: You know, me having my son and spending the
11  time that I did with him it -- I realized there's a lot more to
12  life than what I was living, you know. I -- I thought the life
13  that I was living was okay. You know, I did. I -- I didn't see
14  anything wrong with it. It -- it's natural to me. I grew up in
15  this -- this kind of lifestyle, and now that I had my son I -- I
16  know that's not right. I see the effects that I've had on
17  people and the people around me. I'm.....
18  THE COURT: You know.....
19  MR. WOLFE: .....not going to be.....
20  THE COURT: .....in the early days of this community if
21  someone had caught you breaking into their house they would have
22  just probably hung you on the pole.....
23  MR. WOLFE: Or shot me.
24  THE COURT: .....because -- or shot you. I mean, that's
25  the kind of life you were living.

Page 18

1  MR. WOLFE: Yes, Your Honor.
2  THE COURT: And, you know, once you become a law-abiding
3  citizen and start working for a living and start being concerned
4  about your kids you're going to look at others and say - you're
5  going to expect other people to obey the law, too, because
6  you're going to expect your family to be respected by others and
7  you yourself are going to be respected by others, and you're
8  going to feel angry the first time someone invades your privacy
9  or tries to sell some drugs to your kid. You're going to feel
10  that anger that the community feels towards you now and that
11  maybe you're just starting to feel, so people get angry. Do you
12  understand that?
13  MR. WOLFE: Yes, I do.
14  THE COURT: At people like you, because you break into
15  their houses and you're selling drugs and you're taking
16  advantage of the system, and everyone else is out trying to make
17  a living and trying to just do a decent -- you know, have
18  something decent for their family, and they're having to fight
19  people like you who are out there going behind their back. Do
20  you understand why there's anger here and why you're looking at
21  this kind of sentence?
22  MR. WOLFE: Yes, sir.
23  THE COURT: Okay. I hope you do.
24  MR. WOLFE: I do.
25  THE COURT: Okay. Well, you're very articulate and you're

Page 19

1  well spoken and you write well. You -- I mean, there's no
2  reason why you should be a crook and a drug dealer. You've got
3  the -- a talent to do all kinds of things. I mean, there's no
4  excuse for this. I mean, I know you've had a dysfunctional
5  family. I know that. I don't care. There's no excuse for
6  doing the things you've done. Do you understand that?
7  MR. WOLFE: Yes, sir.
8  THE COURT: Okay. And I don't mean to be interrupting,
9  but we're having a dialogue, right?
10  MR. WOLFE: Yes, sir.
11  THE COURT: Okay.
12  MR. WOLFE: You know, like I said, I know there's nothing
13  I can do to change what I've done.....
14  THE COURT: True.
15  MR. WOLFE: .....but during my -- my incarceration,
16  whatever, I plan on educating myself more in finding trades.
17  That way when I do get out I can show my son that, you know,
18  there's -- there's more to life than what I've done. I want him
19  to know that -- I don't want nobody to lie to my son.
20  THE COURT: You could probably just about -- you -- you've
21  got the brains, you could get a college degree if you wanted to.
22  MR. WOLFE: Yes, sir. I don't want nobody to lie to my
23  son and tell him he -- he's away or -- or he did this or he
24  did -- I want my son to know the truth. I want my son to know
25  that I did something wrong and I have to pay for it. That way

Page 20

1  he knows that when he grows up there are going to be
2  consequences to his actions as well. I don't want him just to
3  think that you can get away with something, because you can't.
4  You know, you might think you're getting away with something for
5  awhile and you might not think about it -- I didn't think about
6  it when I was under the influence of getting in trouble or
7  getting caught. It didn't cross my mind at all. Then the --
8  all I thought about was the next high that I was going to get or
9  how I was going to get it or -- or whatnot, and I'm tired of
10  living my life the way I have been.
11  THE COURT: Okay. Well, no one forced you to do it.
12  MR. WOLFE: No, sir.
13  THE COURT: Now, what is this business, you get caught
14  burglarizing and you got four or five probation revocations?
15  Didn't -- you mean, that didn't get your attention, the fact
16  that you had that time hanging over your head and you're still
17  out messing around, selling drugs while you're on probation?
18  That's pretty lowlife, isn't it?
19  MR. WOLFE: Yes, Your Honor.
20  THE COURT: Pretty disrespectful for the community and for
21  the law and for the system, it sounds like to me.
22  MR. WOLFE: Yes, it was.
23  THE COURT: Well, what am I missing here? What am I not
24  understanding? Or maybe I'm understanding everything.
25  MR. WOLFE: I think you are understanding everything. I

Page 21

1  mean, I can't change what I've done in the past. I guess I
2  don't.....
3  THE COURT: Well, I hope you're not just blowing smoke
4  trying to impress me now because you want a chance to -- you
5  know, you want a little better deal.
6  MR. WOLFE: No, Your Honor.
7  THE COURT: Okay. Well, anything else?
8  MR. WOLFE: No, sir.
9  THE COURT: Well, I -- I'll tell you this, and I think you
10  made it -- I've made it pretty clear, is that we're getting
11  tired of criminals. We're just getting tired of it. People
12  that live in a community, want to build a house, they want to
13  raise their kids, they want to send their kids to school, they
14  want to make -- hopefully, they might make the basketball team,
15  maybe they'll make the honor roll. They don't have to deal with
16  someone kicking the door into their house while they're off
17  doing errands, or trying to sneak drugs to their kids or
18  whatever it is. We're tired of it. That's why we're tired of
19  the criminals and the people that don't respect anyone, all they
20  want to do is get high. We don't know if they're going to shoot
21  someone while they're high or they're going to -- what they're
22  going to do. We're just tired of it. We're tired of drug
23  dealers and people like you who will do those things. You
24  understand that?
25  MR. WOLFE: Yes, I do.

Page 22

1  THE COURT: I hope you've got that message.
2  MR. WOLFE: Yes, sir.
3  THE COURT: And, you know, here you are, you're young,
4  you're stupid in one respect, but you're intelligent. I don't
5  understand that. I'll be your IQ is pretty high, but you've
6  done some pretty stupid things. Do you understand?
7  MR. WOLFE: Yes, I do.
8  THE COURT: So how do you weigh that? I don't know. I
9  want you to understand that you can't ever mess up again. You
10 cannot afford to ever mess up again. As a felon you can never
11 possess a firearm again.
12 MR. WOLFE: Yes, sir.
13 THE COURT: You understand that?
14 MR. WOLFE: Yes, sir.
15 THE COURT: Because it's 10 years in jail, and I see it
16 all the time. People think, well, it's getting close to the
17 end, I just need it for protection or I need -- you know, you
18 can't do it. It's not an option. You understand that?
19 MR. WOLFE: Yes, sir.
20 THE COURT: So don't even think about that. You cannot
21 even associate with people that do drugs. You understand that?
22 They can't be your friends.
23 MR. WOLFE: Yes, sir.
24 THE COURT: And they can't be part of your life. You
25 can't go to that environment, you can't do -- associate with

Page 23

1  those people or do any of those things, because you cannot
2  resist temptation, so you've got to eliminate the temptation.
3  Do you understand that?
4  MR. WOLFE: Yes, sir.
5  THE COURT: And you just got -- you got to make your
6  living the legal way. You don't steal from other people. You be
7  the kind of person you would expect you son to be. You show him
8  by doing the right things. Do you understand that?
9  MR. WOLFE: Yes, Your Honor.
10 THE COURT: I think basically, you know, you committed the
11 drug crime, it's a tough sentence, et cetera, but basically
12 people want to be fair and they want to give people who really
13 are sincere and are committed to do what is right a chance. The
14 hard thing for someone like you is to decide whether or not
15 you're sincere, based on your history. I -- so I see a lot of
16 things that trouble me. Just a troublemaker, one of those guys
17 as a young kid was just a punk who everybody was having to deal
18 with and you're out there doing no good. Now you've grown a
19 little bit. School of hard knocks, I guess, and we got to see
20 what kind of adult you're going to be.
21 On the negative side, drugs are terrible, they mess up our
22 community, they mess up people completely. We know it, we know
23 it, we know it. We see it every day. We have to deter you from
24 doing drugs. We have to deter other people from doing drugs.
25 We have to get that message out to the community. We have to

Page 24

1  reaffirm societal norms, and that is that this kind of conduct
2  is inappropriate, unacceptable, and will not be tolerated. Is
3  that clear?
4  MR. WOLFE: Yes, Your Honor.
5  THE COURT: We have to encourage respect for the law,
6  something you've not had so far in your life, and if you don't
7  want to obey it, that's fine. We got a cage for you, and that's
8  the way it is. If you want to obey it, we're there fighting for
9  you. You understand that?
10 MR. WOLFE: Yes, sir.
11 THE COURT: That's basically what it's all about. You can
12 either respect it or you can be, you know, set aside, because we
13 want to live our lives free of those that don't respect anybody
14 or anything, including themselves, okay? So we have to
15 encourage respect for the law to deter other people, and we have
16 to punish you for what you've done, which has not been good.
17 On the other hand, we look at the other side. You're a
18 young guy, well spoken, have some natural talents. You appear
19 to be remorseful, at least what you say is remorseful, but it's
20 added to -- one additional factor is I can't ignore the fact you
21 turned yourself in. You got a big plus on your side of the
22 chart for that because that shows maybe that you're interested
23 in rehabilitation. Some people say, well, I was going to turn
24 myself in some -- and I was going to change. What you did
25 different is you did it. I don't care about what people are

Page 25

1  going to do. You understand?
2  MR. WOLFE: Yes, sir.
3  THE COURT: So you get a big plus on that side of the
4  scale. You got plenty of negatives, but you got a plus over
5  here. I know you've had a dysfunctional family, and I -- you
6  know, it's sad and tragic, and you don't want to create another
7  one of those families for the next generation. Sometimes these
8  things are generational. Doesn't excuse, it doesn't justify,
9  but it -- you know, I understand. I understand might -- maybe
10 why you know the language of the street more than someone else
11 might because that's all you've heard, why drugs might not be as
12 shocking to you since you've probably got them from the time you
13 were old enough to put anything in your mouth and they were all
14 around you. I understand that. That doesn't make it right, and
15 I never give credit for someone who's committed a horrible crime
16 just because they've had troubles in their lives, because we all
17 have trouble in our life. Every single person in this room has
18 had challenges and troubles and disappointments and setbacks and
19 dreams that have been dashed. That's just life. You understand
20 that?
21 MR. WOLFE: Yes, sir.
22 THE COURT: You think from your perspective everyone else
23 has got some -- everything is good for everyone else bec-- but
24 not you because you've had a dysfunctional family. Untrue.
25 Everyone has challenges. Every single person, whether it be a

Page 26

1  health problem, an employment problem, whatever it is, there are
2  challenges in life, and don't expect to have -- to get -- serve
3  your time and walk out of jail and have no more challenges.
4  You'll have challenges from every day for the rest of your life.
5  I promise you that. That's not the question. The question is
6  whether you deal with those challenges legally and responsibly
7  and maturely. You understand that?
8      MR. WOLFE: Yes, sir.
9      THE COURT: Okay. So, anyhow, I recognize that this
10 disparity of treatment between the powder cocaine and crack
11 cocaine, that's lingering in the back of my mind, certainly not
12 a factor I would place great weight on in a circumstance like
13 this because one of the things I throw into the chart, because I
14 recognize that that's an issue that we're looking at here, and
15 apparent lack of violence is something that I like because I'm
16 getting tired of these violent people, bullies that -- et
17 cetera, although you're no innocent. You have -- you know,
18 you're no innocent.
19     I -- so, anyhow, I'm going to -- you know, I'm going to
20 depart downward two levels just by all these fac-- these 3553
21 factors, that because you turned yourself in is high on the
22 list, because of your youth and your dysfunctional background,
23 because of the disparity between the powder and crack cocaine,
24 because of the apparent lack of violence, I'm going to drop it
25 two levels. That's a big break. You'll never get another break

Page 27

1  like that from me or from any other judge, because all this is
2  being recorded, and whether you're being straight or not
3  straight, I don't know, but if -- and -- but I will know because
4  we'll be able to chart your life.
5      MR. WOLFE: Yes, sir.
6      THE COURT: If you get into jail and if you do what you're
7  supposed to do and if you stay away from the gangs and if you
8  take advantage of all the programs that are there and you come
9  out a better person, a more educated person, and get on with
10 life and develop a career and start to do positive things, then
11 I'll know that your little show today was not a show. If, on
12 the other hand, you're back on the streets doing drugs, don't
13 care about this son of yours, big -- it was nice talking about,
14 you know, when you were being sentenced, but he's long gone, you
15 don't care about him, then I'll know also you'll be back in jail
16 and you'll likely spend the rest of your life there, because no
17 longer will -- you know, you're in the federal system now and we
18 don't tolerate this stuff, not a second time, okay?
19     MR. WOLFE: Yes, Your Honor.
20     THE COURT: This is your first shot in the federal system.
21 Strike two is all you get.....
22     MR. WOLFE: Yes, sir.
23     THE COURT: .....from my perspective, plus I'm the judge
24 that oversees your supervised release, and if I see any messing
25 up, I don't care, you'll -- if you're messing up, that tells me

Page 28

1  it was all a joke in your mind, send him back as long as we can.
2  That's the way I deal with it. You understand?
3      MR. WOLFE: Yes, Your Honor.
4      THE COURT: So I don't know what's a reasonable sentence.
5  I think that we're close -- all of us are close, ev-- you know,
6  it's not a great disparity, but I think 3553 would justify the
7  two-level departure and I just hate to give you the very bottom
8  just because you're not an absolute innocent, so I'm just going
9  to give you 88 months and go from there. I think that's fair,
10 it considers these other factors, but drives home the
11 seriousness of what we're doing here today. The last time
12 you'll ever get a break.....
13     MR. WOLFE: Yes, sir.
14     THE COURT: .....if you choose to be a criminal. I'm also
15 going to recommend the hundred -- 500-hour program, so you can
16 knock a year off your sentence if you do that and don't mess
17 around.
18     MR. WOLFE: Thank you.
19     THE COURT: So it's up to you. No longer is it up to
20 anyone else. Okay, you're getting a little bit of a break here
21 today. You're not fooling me. I know what you've done, I know
22 what you're capable of doing as a crook and a criminal, but I
23 also see some potential and some hope, and the fact you turned
24 yourself in, by the way, is probably why you're getting this
25 break today. Okay?

Page 29

1      MR. WOLFE: Yes, Your Honor.
2      THE COURT: So trust the system, do what's right, and
3  there'll be breaks there. Run from the system, do what's wrong,
4  violate it, and there will be no more breaks, and you've got
5  your last break. Okay?
6      MR. WOLFE: Yes, sir.
7      THE COURT: All right. I think that's pretty clear. Do
8  you have any questions at all about this?
9      MR. WOLFE: No, Your Honor.
10     THE COURT: So what we've got here, just to make sure I
11 got my record clear, is I departed two levels. That means we're
12 dealing with a sentencing, a criminal history -- still it's a
13 criminal history category five, offense level 23, sentencing
14 range of 84 to 100. I sentence to 88. I've done for the
15 reasons previously articulated in the 3553 factors.
16     You're obviously going to have supervised release for the
17 maximum. That's $500. You're not -- can't afford to pay a
18 fine. I will recommend Sheridan and I will also recommend the
19 500-hour program.
20     So let me make this official by reading this into the
21 record. Pursuant to the sentencing reform act of '94 -- 1984,
22 and the -- concerning the provisions of 18 U.S.C. 3553, it's the
23 judgment of the Court that defendant Joshua David Wolfe is
24 hereby committed to the custody of Bureau of Prisons to be
25 imprisoned for a term of 88 months, which term consists of 88

Page 30

1  months on count I and 88 months on count II, all such terms to
2  run concurrently. That means at the same time. Upon release
3  from imprisonment defendant shall be placed on supervised
4  release for a term of five years on counts I and II, all terms
5  to run concurrently.
6      Within 72 hours of release from custody of Bureau of
7  Prisons defendant shall report in person at a probation office
8  in the district from which the defendant is released. While on
9  supervised release the defendant shall not commit another
10 federal, state or local crime, shall not possess a firearm or
11 illegal controlled substance, and shall comply with the standard
12 conditions that are included in the judgment issued by the
13 Court. Additionally, as the offense occurred after the
14 effective date of violent crime control and law enforcement act
15 of September 13, '94 and the Court finds there is a risk of
16 future substance abuse, the defendant shall refrain from
17 unlawful use of controlled substances and shall submit to one
18 drug test within 15 days of release on supervision, at least two
19 periodic drug tests thereafter, not to exceed 12 tests per
20 month, as directed by the probation officer.
21     Defendant shall also comply with the following special
22 conditions. One, the defendant shall cooperate in the
23 collection of a DNA sample from the defendant as directed by the
24 probation officer. Two, in addition to submitting to drug
25 testing in accordance with the violent crime control law

Page 31

1  enforcement act of '94 defendant shall participate in either
2  both or in -- either or both inpatient or outpatient treatment
3  programs approved by the United States probation office for
4  substance abuse treatment, which program shall include testing
5  to determine whether defendant has reverted to the use of drugs
6  or alcohol. At the direction of the probation officer defendant
7  may be required to pay for all or a portion of any treatment
8  program.
9      Defendant shall submit to a warrantless search of his
10 person, his residence, his vehicle, his personal effects, his
11 place of employment, and other property by a federal probation
12 or pretrial services officer or other law enforcement officer
13 based upon reasonable suspicion of contraband or a violation of
14 a condition of supervision. Failure to submit to a search may
15 be grounds for revocation.
16     Do you have any questions about any of this?
17     MR. WOLFE: No, sir.
18     THE COURT: I'm reading this fast because I know it's --
19 you know it's all there, but -- and you've been on probation
20 before, you've been -- you know what's going on. You get out of
21 jail and you mess up, you're going back to jail.
22     MR. WOLFE: Yes, Your Honor.
23     THE COURT: That's what this is all about. They can check
24 to see what you're doing. You can -- people are going to be
25 watching over your shoulder.

Page 32

1      Defendant shall participate in and fully comply with
2  either or both inpatient or outpatient mental health treatment
3  program -- that can't hurt -- approved by the United States
4  probation office. At direction of the probation officer
5  defendant may be required to pay for all or a portion of any
6  treatment program. Here's an important one. The
7  defendant -- they're all important, but you cannot possess a
8  firearm, destructive device or other weapon, and I say that
9  because so often I see people back in jail here going -- back
10 here going back to jail because they decided, oh, well, I'll go
11 ahead and possess a weapon. You can't ever again.
12     MR. WOLFE: Yes, sir.
13     THE COURT: The Court finds defendant does not have the
14 ability to pay a fine or community restitution. It's further
15 ordered that defendant shall pay the United States a special
16 assessment of $200, that's $100 on each count, which will be
17 paid immediately to the clerk of court.
18     As I indicated before I recommend strongly the 500-hour
19 drug and alcohol program recommend placement in Sheridan,
20 Oregon, although that's purely a recommendation and who knows
21 where that will go, and I think that takes care of everything.
22 So that's the sentence that you've earned, Mr. Wolfe. Do you
23 have any questions about it?
24     MR. WOLFE: No, Your Honor, I don't.
25     THE COURT: Now it's up to you. What are you going to do

Page 33

1  with it? You going to mess up and be back in jail and spend
2  the.....
3      MR. WOLFE: No, sir.
4      THE COURT: .....rest of your life there or are you going
5  to make something positive.....
6      MR. WOLFE: I'm going to.....
7      THE COURT: .....about this?
8      MR. WOLFE: .....make something positive for myself, Your
9  Honor. I.....
10     THE COURT: I hope.....
11     MR. WOLFE: .....want to.....
12     THE COURT: .....so. We'll be watching.
13     MR. WOLFE: I want to be there for my son.
14     THE COURT: Well, we'll be watching. You be there for
15 yourself. You know, nothing wrong with being there for your
16 son, but quit talking about that. You start being there for
17 yourself, okay?
18     MR. WOLFE: Yes, sir.
19     THE COURT: It's all up to you. Does that make sense?
20     MR. WOLFE: Yes, sir.
21     THE COURT: You're advised that you may appeal your
22 sentence on any of the grounds mentioned in 18 U.S.C. 3742. If
23 you cannot afford to take an appeal, you may ask to do so at
24 public expense by applying for leave to appeal in forma
25 pauperis. If you request it, the clerk of court will prepare

Case 4:06-cr-00017-RRB   Document 38-2   Filed 06/26/2008   Page 10 of 10

U.S.A. v. WOLFE  
CASE NO. 4:06-CR-0017-RRB-TWH

SENTENCING HEARING  
JULY 27, 2007

(Pages 34 to 35)

```
 1   and file a notice of appeal on your behalf.  If you wish to
 2   appeal, you must do so within the 10-day time period allowed by
 3   rule 4(b) of the federal rules of appellate procedure.
 4        Thank you very much.  We're all done.
 5        MR. WOLFE:  Thank you.
 6        THE CLERK:  This matter is not adjourned.  Court stands in
 7   recess until 10:00 a.m.
 8        (Court recessed)
 9   9:43:23
10   /
11   /
12   /
13   /
14   /
15   /
16   /
17   /
18   /
19   /
20   /
21   /
22   /
23   /
24   /
25   /
```

34

### TRANSCRIBER'S CERTIFICATE

I, Dana J. Kelly, Certified Electronic Transcriber, hereby certify:

That the foregoing pages numbered 1 through 34 are a true, accurate and complete transcript of proceedings in Case No. 4:06-cr-0017-RRB-TWH, U.S.A. v. Wolfe, transcribed by me from a copy of the electronic sound recording to the best of my knowledge and ability.

DATED: June 19, 2008.

*[signature]*  
Dana J. Kelly, CET

35